# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 21-1988C
(Filed: December 5, 2023)

|  |  |
|---|---|
| **MEGAN B. BOROVICKA**, | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| **UNITED STATES**, | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

*Anita M. Chambers* (argued) and *R. Scott Oswald*, The Employment Law Group, PC, Washington, DC, for plaintiff.

*Elinor J. Kim* (argued), Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.  With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Lisa Donahue*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. *William S. Jones*, Senior Counsel, Corporate, Consumer, Insurance, and Legislation Branch, Legal Division, Federal Deposit Insurance Corporation, Arlington, VA, Of Counsel.

## OPINION AND ORDER[1]

**BONILLA, Judge**.

This case arises from Megan B. Borovicka's allegations of gender-based pay discrimination against her employer, the Federal Deposit Insurance Corporation (FDIC).  During her fifth year as an attorney in the agency's Legal Division,

---

[1] This case was transferred to the undersigned for adjudication on February 28, 2022, pursuant to Rule 40.1(b) of the Rules of the United States Court of Federal Claims (RCFC).  On August 16, 2022, the Court denied the parties' cross-motions for judgment on the pleadings.  Discovery continued thereafter through July 24, 2023.  Briefing on the motions resolved herein was complete as of October 17, 2023.  Oral argument was held on November 30, 2023.

Ms. Borovicka learned her base salary was lower than that of her male colleagues. After seeking administrative redress, Ms. Borovicka filed suit in this Court. Pending before the Court are plaintiff's motion to strike defendant's affirmative defense (ECF 37) and defendant's motion for summary judgment (ECF 38). For the reasons set forth below, plaintiff's motion to strike is DENIED and defendant's dispositive motion is GRANTED.

## BACKGROUND

Ms. Borovicka is an attorney based in Oakland, California, who has practiced law in the San Francisco Bay Area since 2005. Prior to her employment with the FDIC in July 2014, Ms. Borovicka successively worked as an associate for nearly eight years at two private law firms in their labor and employment practice groups. In July 2013, she left Morgan, Lewis & Bockius LLP (Morgan Lewis) to pursue "different opportunities" related to "the counseling side of client representation . . . as opposed to primarily focusing on litigation and legal disputes that [had] already arisen." ECF 39 at 163.

In early 2014, after several months of contract work, Ms. Borovicka applied for a Counsel position in the Labor, Employment, and Administration Section within the FDIC's Legal Division in the San Francisco Regional Office. The role was designated Corporate Grade 15 (CG-15) on the FDIC pay scale, with an advertised annual salary range of between $157,329 and $230,700, including locality pay.[2] Supervised by a Senior Counsel and an Assistant General Counsel, the primary duties posted for the position included:

> Provides expert advice and counsel on labor relations and [Federal Labor Relations Authority] laws and procedures, employment law and [Equal Employment Opportunity (EEO)]/[Merit Systems Protection Board (MSPB)] laws and procedures, the Ethics in Government Act, and related regulations to the Division of Administration and other senior management officials. Serves as the Corporation's legal counsel in MSPB/EEO administrative hearings. Participates in mediations and negotiations and consummation of settlements relating to labor and employment matters. Serves as the Corporation's legal representative in unfair labor practices, arbitration, impasse, negotiability and other labor relations proceedings.

ECF 39 at 2. The job description also listed drafting briefs, memoranda, and legal documents; conducting in-house training; and general contract administration. Then-Acting FDIC Assistant General Counsel (AGC) Christine M. Svevar and then-

---

[2] Contrary to Ms. Borovicka's claim that she served in a supervisory role, her position was classified as a non-supervisory Counsel with no direct reports.

Acting Senior Counsel (SC) Judith H. Thomsen served as the hiring managers, responsible for reviewing applications, interviewing candidates and, most relevant here, setting the starting salary for the successful candidate.[3]

In May 2014, Ms. Borovicka and at least one other candidate interviewed for the position with AGC/SC Svevar, SC/C Thomsen, and SC Saul Schwartz. As documented in post-interview evaluations, the interview panel was split on whether to hire Ms. Borovicka: SC/C Thomsen recommended hiring Ms. Borovicka because of her "extensive private sector experience in Employment and Labor Law," whereas SC Schwartz advised against hiring Ms. Borovicka due to her inexperience "in Federal sector labor and employment law/EEO at any level."  ECF 39 at 197–98. Nevertheless, on June 4, 2014, the FDIC made Ms. Borovicka a Conditional Offer of Employment with a proposed salary of $157,329 (i.e., base salary of $110,686, plus a 42.14 percent locality adjustment).  The offer noted, however, "If you are currently earning more in directly related work, a higher salary may be offered upon receipt of your salary documentation."  ECF 39 at 200.

In response to the FDIC's conditional job offer, between June 17 and 19, 2014, Ms. Borovicka submitted her 2012 Form W-2 (Wage and Tax Statement) and monthly pay statements for April through June 2013, documenting her Morgan Lewis salary of $212,000.[4]  Based upon these representations, Human Resource Specialist Diane McKee engaged SC/C Thomsen and other FDIC officials to determine whether Ms. Borovicka should be offered a higher starting salary.  The internal discussion primarily focused on the FDIC salary cap and the amount requiring approval by the Division of Administration Human Resources Compensation Unit (AHRCU).[5]  On June 24, 2014, SC/C Thomsen and AGC/SC Svevar approved a $10,000 bump in base pay, resulting in a revised salary offer of $171,543 (i.e., base salary of $120,686,

---

[3] Ms. Svevar began her FDIC employment in January 1990.  From January 2014 through July 2015, and from February 2017 through June 2018, Ms. Svevar served as Acting Assistant General Counsel. Recently, Ms. Svevar began serving as Acting Deputy General Counsel.  At all other relevant times, Ms. Svevar served as a Senior Counsel.  For clarity, references to Ms. Svevar will be "AGC/SC Svevar." Likewise, Ms. Thomsen began her FDIC employment in 1990.  At the time of Ms. Borovicka's interview, onboarding, and initial period of employment, Ms. Thomsen served as an Acting Senior Counsel.  She otherwise served as a Counsel.  All references to Ms. Thomsen will be "SC/C Thomsen."

[4] At the time she left Morgan Lewis in July 2013, Ms. Borovicka earned a prorated annual base salary of $212,000 (excluding bonuses).  Her prorated salary was commensurate with her eighty percent billable hour requirement.

[5] According to an internal email, a salary offer above $208,818 (i.e., base salary of $146,910, plus the 42.14 percent locality adjustment) required AHRCU approval because it exceeded the midpoint range of the pay grade.  The maximum allowable under the FDIC salary cap of $233,000, even with AHRCU approval, was $232,999 (i.e., base salary of $163,922, plus the 42.14 percent locality adjustment).

plus the 42.14 percent locality adjustment) or $14,214 above the original offer.[6] A Final Offer of Employment was sent to Ms. Borovicka that day, reflecting the increased proposed salary. She accepted the revised offer and began her FDIC employment on July 21, 2014. While Ms. Borovicka's initial supervisor was SC/C Thomsen, AGC/SC Svevar assumed the supervisory role in early 2015.

In April 2014, two months prior to Ms. Borovicka's hiring, AGC/SC Svevar and SC/C Thomsen hired Duane C. Pitt for a Counsel position with the Labor, Employment, and Administration Section in the Atlanta Regional Office. Formerly an active duty judge advocate in the United States Army and a then-Lieutenant Colonel in the reserve component, Mr. Pitt joined the FDIC with nearly ten years' experience as a Labor and Employment Counsel for the General Services Administration (GSA) in addition to his military service. Mr. Pitt was selected from a pool of fifty-seven applicants of which eight were interviewed. The tentative offer made to Mr. Pitt on April 10, 2014, included a salary of $127,477 (i.e., base salary of $110,686, plus a 15.17 percent locality adjustment). After an upward adjustment to match his GSA salary, Mr. Pitt ultimately accepted the position at a salary of $132,037 (i.e., base salary of $114,465, plus the 15.17 percent locality adjustment).[7] Aside from Ms. Borovicka and Mr. Pitt, SC/C Thomsen did not determine the base salary for any other FDIC attorneys.

AGC/SC Svevar, in turn, later served as the hiring manager for one additional Counsel in the Labor, Employment, and Administration Section: Samuel D. Brooks in the Chicago Regional Office. Having worked in the federal government for twenty-five years at the time of his FDIC hire, Mr. Brooks lateraled into the role in December 2016 with an annual salary of $173,391 (i.e., base salary of $145,000, plus a 19.58 percent locality adjustment). Explaining the nearly $25,000 wage gap between the base salaries offered Ms. Borovicka in June 2014 and Mr. Brooks in December 2016, AGC/SC Svevar stated: "Sam Brooks . . . had significantly more federal labor and employment law experience than [Ms. Borovicka]."[8] ECF 39 at 145.

---

[6] The record does not contemporaneously document the basis for the $10,000 increase in base salary. As discussed *infra*, when Ms. Borovicka filed an agency grievance, SC/C Thomsen and AGC/SC Svevar offered that the $10,000 increase was designed to balance Ms. Borovicka's prior law firm salary with the starting salary of a recent hire into a comparable role with extensive federal government experience but no private sector experience.

[7] Although Mr. Pitt's employment offer identified the position under the FDIC's CG pay scale, his Standard Form 50 (SF-50) lists "GS" (General Schedule) as the pay plan. *Compare* ECF 39 at 32 *with id.* at 33–34. During oral argument, the FDIC confirmed Mr. Pitt's FDIC position was always under the CG pay scale, explaining that any GS designation was in error and may have been a remnant of his GS salary at the GSA.

[8] Due to the significant difference in locality adjustments between the San Francisco and Chicago Regional Offices, the net effect of the base salary differential between Ms. Borovicka's and Mr. Brook's gross salaries was approximately $3,000. The Court notes this difference does not account for the passage of nearly thirty months between hires.

In early 2019, Ms. Borovicka learned Conor P. Moore, a Senior Regional Counsel in the Consumer Protection Section–whose position is classified as a CG-14–made nearly $46,000 more than she did.  Ms. Borovicka immediately raised the issue with her skip level supervisor, then-AGC (now-FDIC Chief Human Capital Officer) Jeff Rosenblum.  In May 2019, Ms. Borovicka filed an employee grievance with the FDIC Office of Minority and Women Inclusion (OMWI).  In addition to the perceived wage gap,[9] Ms. Borovicka reported to the OMWI EEO Counselor a May 2016 incident in which AGC/SC Svevar reportedly appointed a male attorney to work with Ms. Borovicka on a mediation matter.  In explaining the personnel assignment to Ms. Borovicka, AGC/SC Svevar purportedly stated, "I think we need someone with more facial hair on our side," presumably to counter the aggressive outside counsel.[10] *See* ECF 46 at 80, *cited in* ECF 46 at 77.  On June 29, 2019, the EEO Counselor issued a report summarizing the employee grievance and OMWI's unsuccessful efforts to resolve the matter.  In December 2019, the FDIC increased Ms. Borovicka's base pay by $8,940, raising her annual salary from $203,076 to $216,154.[11]

In the interim, between June 2019 and September 2021, Ms. Borovicka presented her claims to the Equal Employment Opportunity Commission (EEOC).  After voluntarily withdrawing her EEOC claims, Ms. Borovicka commenced this action on October 7, 2021, under the Equal Pay Act, 29 U.S.C. § 206(d).  Seven months later, on May 20, 2022, Ms. Borovicka filed a collateral case in the United States District Court for the District of Columbia, alleging the FDIC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  *See Borovicka v. Gruenberg*, No. 22-1417 (D.D.C.).  At the parties' joint request, the parallel district court case is stayed pending the resolution of this matter.

---

[9] As detailed *infra*, in her complaint, Ms. Borovicka provides an extensive list of the base salaries of her male colleagues in the Labor, Employment, and Administration Section as well as attorneys in other sections within the Legal Division.  The chief takeaways are all but one of the identified attorneys started with higher base salaries than she and nearly all maintained a wage gap over the course of their employment.  The only male attorney in the section who consistently earned less than Ms. Borovicka was Mr. Pitt.

[10] AGC/SC Svevar summarily denied the May 2016 incident by affidavit.  Concomitantly, AGC/SC Svevar acknowledged remarking to a group of colleagues during a June 2019 after-hours work event regarding former FDIC Chair (2006–2011) Sheila C. Bair's hair and makeup during a recent television appearance.  AGC/SC Svevar also admitted to showing Ms. Borovicka a picture of a dress at a June 2019 dinner.  The parties disagree on the impetus or nature of the conversation and whether male colleagues witnessed the exchange.

[11] The SF-50 dated December 20, 2019, identifies the Nature of Action as "MISC PAY ADJ" (miscellaneous pay adjustment) and references a December 19, 2019 Memorandum.  ECF 39 at 28.  During oral argument, the Court inquired about the December 19, 2019 Memorandum as it was not included in the record presented.  The FDIC explained it performed a broad review of base salaries and increased the salaries of Ms. Borovicka and two or three unidentified male employees to close identified wage gaps.

## DISCUSSION

### I.   Motion to Strike

Seeking to preempt defendant's assertion that the challenged salary decisions were based on gender-neutral factors, Ms. Borovicka moved to strike defendant's reliance upon this affirmative defense.  In support of her motion, Ms. Borovicka points to defendant's failure to plead this affirmative defense in the government's answer and claims defendant frustrated her efforts to explore this issue during discovery. The record presented compels denying Ms. Borovicka's motion.

"Generally, the Court of Federal Claims views motions to strike with disfavor and rarely grants them*." Starr Int'l Co., Inc. v. United States*, No. 11-779, 2013 WL 5976244, at *1 (Fed. Cl. 2013).  Nevertheless, under RCFC 12(f), the Court may preclude a party from relying upon an insufficiently pleaded affirmative defense, either *sua sponte* or upon another party's motion.[12]  "Under the usual rule, an affirmative defense is deemed waived if it has not been raised in a pleading, by motion, or at trial." *Amgen Inc. v. Sandoz, Inc.*, 877 F.3d 1315, 1324 (Fed. Cir. 2017) (internal quotation marks and citation omitted).  Where, as here, the opposing party is given adequate notice, an opportunity to respond, and is not prejudiced by the new defense, the failure to assert an affirmative defense in a responsive pleading does not automatically result in waiver.[13]  *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).  Indeed, when "the sufficiency of a defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted." *Starr Int'l*, 2013 WL 5976244, at *1 (citing *Sys. Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 216 (2006)).

---

[12] Defendant's claim that plaintiff's motion to strike is untimely under RCFC 12(f)(2) is unavailing.  Ms. Borovicka's argument is premised on the government's failure to include the affirmative defense now relied upon in defendant's motion for summary judgment in its answer.  A plaintiff cannot be required to preemptively move to strike all potential affirmative defenses *not* included in an answer. Instead, Ms. Borovicka anticipated the government's reliance upon the gender-neutral pay differential affirmative defense and filed the motion to strike ahead of the defendant's principal brief.  Perhaps the issue is better assessed through waiver than a motion to strike.  Regardless, resolution of these issues is academic as RCFC 12(f)(1) allows the Court to strike pleadings *sua sponte*.

[13] *See, e.g., Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (district court did not err in allowing defendant to raise two new affirmative defenses in a second motion for summary judgment since plaintiff did not experience "surprise or unfair prejudice" from the new defenses); *LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 306 (2018) (granting-in-part defendant's motion for leave to amend answer to include affirmative defense of fraud because plaintiff "should have anticipated the possibility, based on previous interactions with the government, that the affirmative defense and counterclaims relating to [the] alleged fraud could be inserted into the case by defendant"); *City of Gettysburg, S.D. v. United States*, 64 Fed. Cl. 429, 449 (2005) ("In general, a court may allow a non-plead affirmative defense to be raised if it would not result in prejudice to the party.").

In this case, defendant explicitly pleaded one affirmative defense: the two-year statute of limitations, codified at 29 U.S.C. § 255(a), time-barred any Equal Pay Act claims arising before October 7, 2019 (i.e., two years before the complaint was filed).[14] In moving for summary judgment, defendant's principal argument is that the FDIC used factors other than sex in setting Ms. Borovicka's pay—an affirmative defense codified in the Equal Pay Act.  Defendant's answer is devoid of any mention of the "other factors" affirmative defense.[15]

Notwithstanding the government's deficient pleading, the Court finds Ms. Borovicka had adequate notice, ample opportunity to respond, and is not prejudiced by the FDIC's assertion of the other factors affirmative defense. The Equal Pay Act enumerates four specific affirmative defenses that may be raised by defendants, including "a differential based on any other factor other than sex." *See* 29 U.S.C. § 206(d)(1).   In the parties' joint preliminary status report filed on September 16, 2022, one of the two "relevant legal issues" identified was: "Whether the FDIC set Plaintiff's pay pursuant to a legitimate factor other than sex."  ECF 18 at 2.   Thereafter, in an interrogatory response addressing the FDIC's affirmative defenses, defendant cited the four codified affirmative defenses in the Equal Pay Act and referenced the FDIC Pay Administration Program, Circular 2220.1, and superseding guidance, quoted *infra*, as the basis for "setting Ms. Borovicka's initial base pay."[16]   ECF 37-2 at 3.   Defendant similarly responded to Ms. Borovicka's discovery request addressing the "any other factor other than sex" affirmative defense by asserting the agency's pay policies and guidance "are factors unrelated to sex."[17] ECF 37-2 at 8.  These representations–a theme throughout defendant's responses to plaintiff's discovery requests and the administrative proceedings–align with defendant's motion for summary judgment and provided Ms. Borovicka adequate notice of defendant's affirmative defense.[18]

Ms. Borovicka has been afforded the requisite opportunity to respond as evidenced by her preemptive motion to strike and substantive response to defendant's other factors affirmative defense in the pending dispositive motion addressed *infra*.

---

[14] Section 255(a) extends the statute of limitation to three years in cases where the violation is deemed willful.  29 U.S.C. § 255(a).

[15] At oral argument, the FDIC asserted the "other factors" affirmative defense was *indirectly* pleaded in paragraph one of their answer.  Defendant's claim is substantively and functionally belied by the filing.

[16] During their deposition testimony and affidavits, FDIC personnel similarly pointed to gender-neutral factors in denying Ms. Borovicka's allegations of gender-based pay.

[17] Interrogatory No. 10 pointedly asks: "Describe and identify the facts that support FDIC's affirmative defense of a differential based upon any factor other than sex."  ECF 37-2 at 8.

[18] It is worth noting plaintiff's motion to strike immediately preceded defendant's dispositive motion, further demonstrating plaintiff's anticipation of the FDIC's reliance upon the other factors affirmative defense.

Consequently, any prejudice she suffered is due to the underlying merits of the affirmative defense rather than any surprise or inability to respond. To this point, it is worth noting the documents defendant relies upon in support of their motion for summary judgment on this issue were produced to Ms. Borovicka during discovery. Plaintiff's claims of prejudice are therefore unavailing. *See, e.g.*, *Al-Kurdi v. United States*, 25 Cl. Ct. 599, 604 (1992) ("Plaintiff was not prejudiced by defendant's failure to assert the affirmative defense of statute of frauds. Plaintiff has adequately argued against defendant's motion for summary judgment. This court will permit defendant to raise the defense.") (footnote omitted).

In sum, Ms. Borovicka failed to demonstrate unfair surprise, inability to respond, or prejudice warranting the rare sanction of preventing the government–through strike or waiver–from relying upon the codified other factors affirmative defense. Accordingly, Ms. Borovicka's motion to strike is denied.[19]

## II.   Summary Judgment

The Court now turns to defendant's motion for summary judgment. For the following reasons, defendant's position is supported by the record and merits granting judgment as a matter of law.

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts," in turn, are those "that might affect the outcome of the suit." *Id.* In deciding motions for summary judgment, the Court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That burden can be met by showing "there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "Once the moving party has satisfied its initial burden, the opposing party must establish a

---

[19] Adhering to the letter and spirit of RCFC 15(a), the Court would alternatively grant a request by defendant to amend its answer to include the other factors affirmative defense. *See Al-Kurdi*, 25 Cl. Ct. at 604 ("[T]his court is compelled to 'freely' grant a party leave to amend its pleading 'when justice so requires.'") (quoting *Johnson v. United States*, 15 Cl. Ct. 169, 172 (1988) (quoting RCFC 15(a))).

genuine issue of material fact and cannot rest on mere allegations, but must present actual evidence." *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citing *Anderson*, 477 U.S. at 248).  Summary judgment is warranted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## B. Equal Pay Act

The Equal Pay Act provides in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).  "To make out a prima facie [Equal Pay Act] case, a claimant bears the burden to show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Moore v. United States*, 66 F.4th 991, 997 (Fed. Cir. 2023) (en banc) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1))) (internal quotations omitted).  If the plaintiff puts forth a plausible statutory violation, the burden then shifts to the employer to demonstrate the wage gap is instead attributable to a codified exception. *Santiago v. United States*, 107 Fed. Cl. 154, 158 (2012) (citing *Cnty. of Washington v. Gunther*, 452 U.S. 161, 169 (1981); *Corning Glass Works*, 417 U.S. at 196).  "A plaintiff may rebut the employer's affirmative defense with evidence that the defendant's proffered reasons for the wage disparity are a mere pretext for sex discrimination." *Cooke v. United States*, 85 Fed. Cl. 325, 342 (2008).

### a.  Prima Facie Case

Throughout her complaint, and in response to defendant's motion for summary judgment, Ms. Borovicka comparatively lists the purported historic base salaries of ten current and former male colleagues employed in the FDIC's Legal Division:

9

| Name | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|
| M. Borovicka | $120,686 | $122,296 | $126,354 | $130,430 | $134,575 | $138,827[20] | $151,377 | $154,859 |
| | | | | | | | | |
| S. Brooks | ** | ** | $145,000 | $145,000 | $149,608 | $154,335 | $158,348 | $161,990 |
| S. Cooper | ** | ** | ** | $187,524 | $192,747 | $195,445 | $196,422 | ** |
| N. Cuebas | ** | ** | ** | $190,091 | $192,747 | $195,445 | $196,422 | ** |
| W. Edwards | ** | ** | ** | $149,639 | $155,345 | $161,235 | $165,427 | ** |
| E. Gold | ** | ** | ** | $174,658 | promoted | n/a | n/a | n/a |
| L. Kelly | ** | ** | ** | $190,091 | $192,747 | $195,445 | $196,422 | ** |
| S. Kott | ** | $165,000 | $169,350 | $174,852 | $180,476 | $186,178 | $191,019 | $195,412 |
| A. Norman | ** | $130,215 | $133,672 | $137,984 | $142,369 | $147,767 | $151,609 | $154,641 |
| T. Sarisky | ** | ** | ** | $205,121 | $192,747 | $195,445 | $196,422 | ** |
| A. White | ** | ** | $136,497 | $136,497 | $140,834 | $145,284 | $182,952[21] | $187,160 |

** denotes individual not employed by the FDIC or salary not reported in the record

Citing the disparate starting base salaries, compounded by annual merit pay increases and cost of living adjustments, Ms. Borovicka avers the wage gaps illustrate the requisite gender disparity to establish a prima facie Equal Pay Act violation.

Notably absent from Ms. Borovicka's data presentation is any substantive comparison of the roles and responsibilities of the claimed comparators. Sidestepping Mr. Pitt's base salary information in her complaint, Ms. Borovicka simply remarks that the charted FDIC employees are CG-15 Counsels assigned to the Legal Division and, thus, comparable. As noted above, Mr. Pitt was hired two months before Ms. Borovicka to fill an identical position in a different field office. Both were initially offered the same minimum base salary of $110,686. Following their respective negotiations, Mr. Pitt was offered and accepted a base salary of $114,465 (i.e., $6,221 *less than* Ms. Borovicka).

Defendant maintains the ten FDIC employees identified by Ms. Borovicka do not qualify as comparators and, conversely, argues the sole true comparator is Mr. Pitt. Specifically, the FDIC distinguishes Scott Cooper, Nestor Ramirez Cuebas, Eric Gold, Stephen Kott, Aaron Norman, Thomas Sarisky, and Antonier White from Ms. Borovicka on the grounds they are headquarters employees: their roles and responsibilities are upgraded to address escalated issues of national and corporation-wide implication, compared to the day-to-day regional issues handled in field offices

[20] As noted *supra*, in December 2019, after Ms. Borovicka raised concerns about her compensation, the FDIC adjusted her base pay to $147,767. The increase put Ms. Borovicka's base pay on par with Mr. Norman's base pay and slightly above Mr. White's base pay.

[21] When questioned by the Court at oral argument, the FDIC could not explain why Mr. White received a nearly $40,000 increase in base pay between January 2019 and January 2020. His SF-50s simply reference "REG PERF PAY" (regular performance pay). *See* ECF 46 at 135–36.

by Counsel like Ms. Borovicka.[22]  Regarding Samuel Brooks, William Edwards, and Louis Kelly, defendant avers the Chicago, Dallas, and Kansas City Regional Offices are historically busier than the San Francisco and Atlanta Regional Offices and, for this reason, require heightened experience and expertise.  Leaving only Mr. Pitt as Ms. Borovicka's true comparator, defendant contends plaintiff fails to satisfy her initial burden of establishing a prima facie case.[23]

Notwithstanding their facial appeal, defendant's contentions are too late.  In their opening brief, defendant glossed over Ms. Borovicka's initial burden to establish a prima facie case and instead moved for summary judgment on two affirmative defenses: gender-neutral decision making and statute of limitations.  Despite defendant's declarations the FDIC was not conceding or waiving the issue, defendant did not substantively contest Ms. Borovicka's ability to make out a prima facie Equal Pay Act violation until its reply brief.  In doing so, defendant prevented Ms. Borovicka from responding to the arguments now advanced.  Consequently, defendant conceded this issue for the limited purpose of resolving the FDIC's motion for summary judgment.  *See Ironclad/EEI v. United States*, 78 Fed. Cl. 351, 358 (2007) ("[U]nder the law of this circuit, arguments not presented in a party's principal brief to the court are typically deemed to have been waived."); *see Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).  However, as discussed *infra*, the FDIC's position descriptions and responsibilities illustrate other factors agency hiring managers may have considered in setting base pay.

### b.  Gender-Neutral Affirmative Defense

To overcome a presumed Equal Pay Act violation under the codified gender-neutral affirmative defense, defendant must present preponderant evidence the cited pay differential is "based on any other factor other than sex."  26 U.S.C. § 206(d)(1); *see Cooke*, 85 Fed. Cl. at 349–50.  More specifically, defendant bears the "heavy" burden of demonstrating the identified gender-neutral reason actually served as the basis for the facially disparate salaries.  *See Boyer v. United States*, 159 Fed. Cl. 387, 401 (2022) ("[A]n employer must prove that the gender-neutral factor it identified is indeed *the* factor causing the wage differential in question.") (citing cases) (cleaned up).  In this case, defendant asserts the FDIC decisioned Ms. Borovicka's initial base salary in accordance with agency policy, considering the following gender-neutral factors: relevant employment history; prior salary; federal sector experience; and, critically, the base salary of a recent hire into an identical role.  The Court agrees.

---

[22] The FDIC further notes Mr. Kott is a former agency employee who lateraled into the Labor, Employment, and Administration Section and was onboarded at his then-current FDIC salary consistent with agency policy.

[23] Regarding Mr. Moore, the FDIC highlights his readily distinguishable and more complex role in the fields of banking compliance and consumer protection.  Although learning of Mr. Moore's comparative annual gross salary was the catalyst for her initial grievance, Ms. Borovicka does not map out his historic annual base pay in her current claim.

11

The initial and final salary offers made to Ms. Borovicka and Mr. Pitt were consistent with the FDIC's Pay Administration Program and implementing Guide to Pay Setting, as well as the agency's Standard Operating Procedures (SOP) for Pay Setting Procedures for Corporate Graded (CG) Positions (SOP Pay Setting Procedures). These internal policies, guidance, and procedures generally recommend setting new employees' salaries at the minimum end of the designated pay grade range but allow for discretionary upward adjustments to compensate for relevant experience. The FDIC's Pay Administration Program, for example, provides in part:

> It is the general policy that upon appointment to FDIC by initial hire . . . basic pay shall be set at the minimum of the grade for the position that the employee is being hired.
>
> However, new employees shall receive an appointment at a rate above the minimum basic pay when the employee is or was receiving a higher rate of pay (highest previous rate) in a related field. In these cases, the employee's higher adjusted rate of pay (or the equivalent) should be matched by comparing it with the FDIC Adjusted basic pay for the official duty station.
>
> Highest previous rate is defined as the highest rate of basic pay earned in a permanent position or under a temporary promotion lasting more than one year. . . . The final determination shall be made by [Human Resources Branch].

ECF 39 at 53 (FDIC Pay Administration Program, Circular 2220.1, Chapter 5-1 (rev. July 2, 2003)).

The superseding guidelines highlight the discretionary nature of above-minimum range salary offers. While the FDIC typically sets a new hire's salary at the grade range minimum, there are exceptions to this rule, such as when a candidate documents a higher prior salary held for over a year (i.e., "highest previous rate"). *Id.* at 70, 73 (Guide to Pay Setting – [Risk Management Supervision], Corporate HR Performance & Compensation Section (May 8, 2014)). The guidelines further address the limited circumstances in which bonuses may be considered part of a candidate's highest previous rate, *see id.* at 74, as well as "Reasons to Pay above Highest Previous Rate," including: "possession of related education"; "experience and skills critical to the needs of the organization"; "external market pressures"; "difficulty in attracting candidates to a particular office location"; "current pay significantly lower than similarly situated employees"; and "position in the range" or "salary low in range relative to experience and training." *Id.* at 76. These factors are largely reiterated in the SOP Pay Setting Procedures. *See id.* at 102–05 (SOP Pay Setting Procedures (Aug. 4, 2009)). Internal FDIC emails contemporaneously referenced the agency

policy, guide, and procedures in evaluating Ms. Borovicka's previous private sector salary and its potential impact on negotiations.  *See* ECF 39 at 201–04.

In their respective Conditional Offers of Employment, Ms. Borovicka and Mr. Pitt were offered salaries at the low end of the advertised salary range.  Both candidates were then invited to produce documents justifying a higher starting salary.  The net results of their respective engagements are as follows:

| Name | Initial Offer (Base) | Initial Offer (incl. locality pay) | Increase to Base | Final Offer (incl. locality pay) |
|------|------|------|------|------|
| M. Borovicka | $110,686 | $157,329 | $10,000 | $171,543 |
| D. Pitt | $110,686 | $127,477 | $ 3,959 | $132,037 |

Ms. Borovicka's initial salary offer increased in the aggregate amount of $14,214 (i.e., $10,000 increase in base salary, plus the 42.14 percent locality adjustment), whereas Mr. Pitt's salary offer increased in the aggregate amount of $4,560 (i.e., $3,959 increase in base salary, plus the 15.17 percent locality adjustment).[24]

In approving the $10,000 increase in base pay offered to Ms. Borovicka in June 2014, SC/C Thomsen and AGC/SC Svevar were presented with and considered the following gender-neutral factors:

- Guidance from Human Resources personnel that the authorized salary range for the position was between $157,329 and $232,999, including the locality adjustment.

- Ms. Borovicka's highest previous rate of $212,000.

- With the exception of a one-month undergraduate internship at the White House, Ms. Borovicka had no federal government experience.

- Ms. Borovicka had no experience in federal sector labor and employment law.[25]

- Ms. Borovicka had "extensive private sector experience in Employment and Labor Law."  *See* ECF 39 at 198.

---

[24] Though not directly supported in the record, at oral argument, the FDIC stated Mr. Pitt's increase was intended to match his then-current GSA salary.

[25] As noted *supra*, Ms. Borovicka's lack of federal sector experience prompted a member of her interview panel to "strongly" recommend against hiring her.  *See* ECF 39 at 197.  In a post-interview email to AGC/SC Svevar, SC Schwartz further wrote: "In my 25 plus years in this section, we have never selected an external candidate who has not had experience in Federal sector labor and employment law/EEO at any level" and advised that selecting Ms. Borovicka over another (female) candidate "would be a mistake."  *Id.*

- AGC/SC Svevar and SC/C Thomsen recently determined Mr. Pitt's starting salary, which accounted for his extensive federal government and federal sector labor, as well as employment law experience and lower highest previous rate.

On this last point, AGC/SC Svevar was particularly mindful that a higher base salary offer would create "a huge disparity" between Ms. Borovicka's and Mr. Pitt's pay. *See id.* at 144.

As noted above, except for Ms. Borovicka and Mr. Pitt, AGC/SC Svevar set the initial base pay for only one other FDIC Counsel, Mr. Brooks, at $145,000 in 2016.[26] Even though Mr. Brooks' starting base salary was nearly $25,000 higher than Ms. Borovicka's 2014 offer, AGC/SC Svevar explained in a June 2019 affidavit that Mr. Brooks' initial base salary was commensurate with his "significant[]" prior experience in federal labor and employment law. *Id.* at 145. During oral argument, the FDIC produced a Pay Exemption Request memorandum dated November 18, 2016, detailing Mr. Brooks' twenty-plus years of experience as a Trial Attorney and Assistant United States Attorney at the United States Department of Justice, as well as his role as a Senior Litigation Counsel and Deputy Managing Counsel at the United States Postal Service (USPS), which immediately preceded his FDIC position. At USPS, Mr. Brooks' total salary was $159,600.[27] In fact, the FDIC initially offered Mr. Brooks a five percent increase from his USPS salary, and he negotiated an 8.6 percent raise. As justification, the memorandum stated Mr. Brooks had "more years of work experience than the 3 Counsels in [the Labor, Employment, and Administration Section]," noting the median length of federal experience in the section was then fourteen years (i.e., six years less than Mr. Brooks' experience). This is consistent with AGC/SC Svevar's justification for setting Mr. Brooks' base salary at $145,000 and further demonstrates the significant difference between Mr. Brooks' and Ms. Borovicka's federal experience.

Likewise, there is no indication–nor do the parties suggest–AGC/SC Svevar and SC/C Thomsen played any role in setting the base pay for the remaining FDIC employees identified by Ms. Borovicka. The FDIC's differentiation of the various Counsels' roles, responsibilities, and experiences–although asserted too late to preempt Ms. Borovicka's presentation of a prima facie case–plausibly explain other hiring managers' differing salary decisions. Non-gender-based factors such as the national and corporation-wide scope of a position's work, as well as the pace of field offices' workload, impact the demands of the various positions and contribute to differing base salaries. In this respect, Ms. Borovicka's regional position, working in

---

[26] Nothing in the record suggests SC/C Thomsen–who served as a hiring manager for both Ms. Borovicka and Mr. Pitt–was consulted or otherwise involved in decisioning Mr. Brooks' base pay.

[27] When asked during oral argument, the FDIC could not specify Mr. Brooks' USPS base salary. However, counsel represented the position was based in the Chicago area, though they were unaware of the relevant locality pay for such a role.

a slower-paced office on non-escalated issues, distinguished her role from claimed comparators and warranted a different salary.

At bottom, the FDIC met its burden of amply demonstrating Ms. Borovicka's starting base salary was decisioned on properly asserted and contemporaneously documented gender-neutral considerations. Accordingly, the Court is persuaded the FDIC used gender-neutral factors in determining Ms. Borovicka's initial base salary and now moves to her pretext rebuttal argument.

        *c. Pretext*

Ms. Borovicka claims the FDIC's "shifting explanations" in setting her initial base pay establish pretext. Peeling back defendant's enhanced contentions, at its core, Ms. Borovicka's initial base pay was based on the FDIC's Pay Administration Program, Guide to Pay Setting, and SOP Pay Setting Procedures and was consistent with the initial base salary most recently offered to and accepted by comparator Mr. Pitt. Ultimately, Ms. Borovicka's rebuttal claims of pretext fall short.

As outlined in the preceding section, FDIC Human Resources personnel consulted applicable agency policy, guidance, and procedures in framing the base salary discussion and decision for SC/C Thomsen and AGC/SC Svevar (i.e., calculated salary range, highest previous rate, escalation triggers, approval thresholds). Using this framework, the hiring managers assessed Ms. Borovicka's comparative professional qualifications, experience, and limitations, as well as her previous private law firm salary, critically accounting for the salary decision made for Mr. Pitt in filling an identical position in another field office two months earlier. These actions and the resulting salary decision do not run afoul of the Equal Pay Act.

Although not asserted by Ms. Borovicka as evidence of pretext, the Court is compelled to note certain incidents of allegedly sexist behavior in the record. As recently iterated by the Federal Circuit, "the [Equal Pay Act] does not require . . . proof of intentional discrimination." *Moore*, 66 F.4th at 996 (citation and internal quotation marks omitted). Nevertheless, intent may demonstrate pretext for discrimination: "Plaintiff's showing [of pretext] may be made either through evidence of an employer's 'intent to discriminate on the basis of gender,' or through circumstantial evidence that defendant's affirmative defense is pretextual." *Spellers v. United States*, 157 Fed. Cl. 171, 176 (2021) (quoting *Behm v. United States*, 68 Fed. Cl. 395, 400 (2005)).

In this case, as noted *supra*, the Court is aware of three ill-advised and unprofessional comments purportedly made by AGC/SC Svevar on two occasions spanning across four years. The first involved the May 2016 assignment of a male colleague to assist Ms. Borovicka in a mediation, where AGC/SC Svevar suggested that a man ("someone with more facial hair") was needed to better counter an aggressive male attorney representing the other side. The second and third instances

occurred during an after-hours work event in June 2019, in which AGC/SC Svevar commented on the hair and makeup of a former female FDIC Chair and later embarrassed Ms. Borovicka–in the presence of male colleagues–by sharing a picture of a revealing ball gown and suggesting Ms. Borovicka would look good in it.  AGC/SC Svevar denies the May 2016 exchange and offers contextual and nuanced explanations for her reported June 2019 comments.

In ruling on this issue, the Court assumes as true the three events as described by Ms. Borovicka.  *See Matsushita*, 475 U.S. at 587–88.  However, these isolated incidents–which involve solely AGC/SC Svevar–do not merit a finding of pretext.  No such allegations or evidence exist in the record involving SC/C Thomsen.  More importantly, Ms. Borovicka failed to demonstrate how these inappropriate incidents undermined the hiring managers' reliance on the above detailed non-gender considerations in setting pay (i.e., experience, prior salary, internal pay consistency) or otherwise indicated a disingenuous reliance on such factors.

For these reasons, the Court is unpersuaded by Ms. Borovicka's rebuttal argument.  The Court therefore finds defendant has met their burden for summary judgment and is entitled to judgment as a matter of law.[28]

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike (ECF 37) is **DENIED** and defendant's motion for summary judgment (ECF 38) is **GRANTED**.  The Clerk of Court shall **ENTER** Judgment in favor or the United States.

No costs.

It is so **ORDERED**.

_____
Armando O. Bonilla
Judge

---

[28] In granting defendant's motion for summary judgment on their gender-neutral affirmative defense, the Court need not resolve the alternative statute of limitations issue.  Suffice it to say Ms. Borovicka's unsuccessful claims of pretext would likely doom her claims of willful violations of the Equal Pay Act.